IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GLADYS A. EL-DEYASSTTY,
        Plaintiff,

v.                                                 Civil Action No. 3:12-cv-00132-JAG

CAPITAL REGION AIRPORT COMMISSION
        Defendant.

## MEMORANDUM OPINION

This case is before the Court on the plaintiff and defendant's cross-motions for summary judgment under Federal Rule of Civil Procedure 56. The case stems from alleged sexual harassment by the defendant's employees and the plaintiff's subsequent termination. The plaintiff has brought several claims, arguing that the defendant's employees sexually harassed the plaintiff and that the plaintiff was discharged due to her sex and in retaliation for filing prior charges against the defendant with the EEOC. Because the plaintiff fails to support these claims with any evidence and because the defendant offers a legitimate, nondiscriminatory reason for its actions, summary judgment is granted to the defendant.

## I. STATEMENT OF FACTS

The plaintiff, Gladys A. El-Deyasstty, began working for the defendant, Capital Region Airport Commission ("the Commission"), as a custodian in July 2008. (Victor L. Williams Aff. ¶ 11, May 7, 2012.) During El-Deyassty's first year of employment, she earned a favorable evaluation and recognition for her professional contributions to the Commission. (Pl.'s Compl. Exs. 10, 12.)

In June 2009, about one year after she was hired, El-Deyasstty left a voicemail with Jon E. Mathiasen, the President and CEO of the Commission, claiming that she had not received a

check which the Commission owed her. (Jon E. Mathiasen Aff. ¶ 2, May 8, 2012.) Two months later, she again called Mathiasen to grieve the non-receipt of this check and report that a supervisor addressed her two months earlier with sexually derisive language. (Mathiasen Aff. ¶ 3.) El-Deyasstty also complained that her co-workers accused her of engaging in sexual activity at work, that a tabloid was interested in reporting the story, and that her co-workers teased her about receiving a check compensating her for the media coverage. (Williams Aff. ¶¶ 5-7; Pl.'s Answer 1-2.) El-Deyasstty reportedly overheard individuals other than her coworkers making similar accusations, including airline attendants and a 7-11 convenience store clerk. (Mathiasen Aff. ¶ 8.)

Victor L. Williams, the custodial department director, discussed these allegations with El-Deyasstty and questioned the particular employees she accused, but found no evidence to corroborate her allegations. Due to the nature of her complaints and the fact that her position involved daily security clearance and access to passenger spaces, the Commission became concerned that she may pose a threat to the safety of herself or others. The Commission placed El-Deyasstty on paid administrative leave and asked her to seek the care of a licensed behavioral healthcare professional. She remained on leave for over two months due to mental stress before returning in October. (Williams Aff. ¶¶ 10-12, 15, 17.) In January 2010, she filed a charge of sex-based discrimination with the EEOC, but no legal action followed.[1] (Pl.'s Compl. Ex. 13, at 4; Pl.'s Answer 3-4.)

Over the course of 2010, El-Deyasstty twice approached Mathiasen, accusing coworkers of "scamm[ing]" her, trying to kill her, and harassing her about the check. (Mathiasen Aff. ¶¶ 4-

---

[1] Specifically, the charge names the four coworkers whom El-Deyasstty claims teased her about the check and falsely accused her of performing sexual acts in June 2009. She also claims that she twice reported the harassment to her supervisor but that no corrective action was taken. (Pl.'s Mot. Ex. 13, at 4.)

5; Linn Aff. ¶ 3.) In both occurrences, Williams met with El-Deyasstty to discuss the claims and the Commission conducted an investigation, yet neither found any support. (Williams Aff. ¶¶ 20, 29; Paul Barksdale Aff. ¶¶ 2-3.) After each fruitless investigation, the Commission placed El-Deyasstty on paid administrative leave, requested she seek professional care, conditioned her return on certification of her fitness to work, and offered to reimburse the associated costs. In each instance, El-Deyasstty remained on leave for at least two-and-a-half months, suffering from paranoia, anxiety, delusions, and difficulty with making rational decisions. (Def.'s Mot. Exs. 1-D, 1-H, 1-F, 1-G, 1-I.)

In early February 2011, El-Deyasstty reported to Paul Barksdale, the Commission's Custodial Manager, a specific incident of harassment involving a male coworker. (Barksdale Aff. ¶ 4.) According to El-Deyasstty, the man entered a public restroom, refused El-Deyasstty's instruction to leave, and spied on her while she used the facilities. (Pl.'s Compl. Part 2, 16-17.) The Commission promptly interviewed the accused employee, who admitted to engaging in the harassing conduct and was terminated as a result. (Williams Aff. ¶¶ 37-38; Barksdale Aff. ¶¶ 4-5.) This was the only time that the Commission found any evidence to corroborate El-Deyasstty's claims of sexual harassment by coworkers.

Later that month, El-Deyasstty sent a letter to Mathiasen's home address, claiming that someone had impersonated Mathiasen. The letter also accused a female coworker of impersonating El-Deyasstty, bringing a gun to work, and threatening to kill El-Deyasstty and her family. (Def.'s Mot. Ex. 1-J.) El-Deyasstty was placed on leave—now for the fourth time—but yet again the investigation failed to uncover any evidence of wrongdoing by any individual. Because El-Deyasstty falsely accused coworkers of violating both Virginia law and Commission policy, she was suspended for two weeks without pay as a disciplinary measure. Additionally,

the Commission issued a warning forbidding her from communicating with any Commission employee at his or her home. Specifically, the Commission warned, "[s]hould you contact Commission employees at their homes or other places of residence in the future, whether by mail, by phone, or otherwise, such action will result in your immediate termination from employment with the Commission." (Pl.'s Compl. Ex. 6, at 2-3.)

On March 10, 2011, El-Deyasstty called a current and a former coworker at their respective homes to discuss their testimony at a Virginia Worker's Compensation Commission hearing between El-Deyasstty and the Commission. (Williams Aff. ¶ 50; Pl.'s Compl. Part 2, 18.) Because this directly violated the Commission's directive, her employment was terminated.[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period of time for discovery, Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The court resolves all genuine factual disputes and inferences in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*), and determines whether there is a genuine issue for trial based on the entire record as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] The Commission also cites El-Deyasstty's use of profanity during these calls as a further violation of Commission policy and an independent basis for her termination. Though El-Deyasstty denies this allegation, it is not necessary to resolve this dispute in order to decide the case. (Pl.'s Compl. Exs. 2, 5, 13.)

4

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See id.* at 586–88. The non-movant may not rest upon claims within its pleading, but must "go beyond the pleadings," *Celotex*, 477 U.S. at 324, and "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (emphasis omitted) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law."). Establishing that there is a genuine issue for trial requires the non-movant to present sufficient evidence supporting each element of the claim, such that a reasonable individual could find in the non-movant's favor. *Harik v. Nat'l Aeronautics and Space Admin.*, No. 4:06CV56, 2006 WL 2381964, at *7 (E.D. Va. Aug. 16, 2006). Nonetheless, if the factual context renders the non-moving party's claim implausible, the non-moving party has a higher burden of proof than what is normally required in order to survive a motion for summary judgment. *Matsushita*, 475 U.S. at 587. Trial judges have an affirmative obligation to preclude factually unsupported claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III. DISCUSSION

The plaintiff makes three claims under Title VII of the Civil Rights Act of 1964: discrimination on the basis of sex, sexual harassment, and retaliation. 42 U.S.C. § 2000e *et seq.*

Each of these claims fails because the plaintiff has not produced sufficient evidence to establish a prima facie case of a Title VII violation. Further, the defendant has a legitimate, non-discriminatory reason for the plaintiff's termination, which she fails to refute. As the plaintiff is ultimately unable to meet her burden, summary judgment is warranted for the defendant.

### A. Sexual Harassment

El-Deyasstty alleges two separate incidents of sexual harassment involving coworkers: a male coworker following her into the restroom and a female coworker threatening to kill her.[3] Her claim ultimately fails, however, because she fails to impute the harassing conduct to the employer, a necessary element to liability. In order to state a Title VII prima facie case of sex-based discrimination under a hostile work environment theory, a plaintiff must establish (1) the harassing activity was unwelcome, (2) it was based on the plaintiff's sex, (3) it was sufficiently severe or pervasive as to alter the plaintiff's terms and conditions of employment, and (4) it was factually imputable to the employer. *Spicer v. Va. Dep't of Corr.*, 66 F.3d 705, 709-10 (4th Cir. 1995). Hostile work environment claims hold the employer to a negligence standard. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 759 (1998). An employer is negligent if it knew or should have

---

[3] El-Deyasstty also claims that the four coworkers taunting her about receiving her check amount to sexual harassment. This claim is irrelevant, however, because it is time barred. Title VII's statute of limitations requires that all claims be filed with the EEOC no more than 300 days after the alleged violation and 90 days after receiving notice of their right to sue. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (failing to exhaust administrative remedies deprives the court of subject matter jurisdiction in Title VII claims). Additionally, plaintiffs who seek recovery by filing with the EEOC but do not file charges with the court in a timely manner cannot subsequently attempt to recover for those same claims under a continuing violations theory. *Williams v. Enter. Leasing Co.*, 911 F. Supp. 988, 997 (4th Cir. 1995) (requiring plaintiffs to establish that they failed to appreciate the conduct's discriminatory nature in order to recover for untimely claims under a continuing violations theory and holding that filing a claim with the EEOC negates such a showing). El-Deyasstty filed a claim with the EEOC on January 11, 2010, alleging that her coworker's taunts constituted sexual harassment. This claim is outside of the statute of limitations and therefore cannot properly be pled before the Court.

known of the harassment and did not take action to stop the conduct. *Id.; see also Alexander v. Alcatel NA Cable Sys., Inc.*, 50 Fed. Appx. 594, 601 (4th Cir. 2002) ("[T]he employer is only liable if it was negligent in failing, after actual or constructive knowledge, to take prompt and adequate action to stop the harassment.").

El-Deyasstty's first sexual harassment claim involves a male coworker who entered a women's restroom, refused to leave when asked, and spied on El-Deyasstty while she used the facilities. El-Deyasstty reported the conduct to her supervisor; the Commission investigated, found El-Deyasstty's allegations valid, and terminated the offending employee immediately. Such corrective action is completely at odds with an allegation of negligence. *See Spicer*, 66 F.3d at 711 (explaining that imposing employer liability despite appropriate remedial action would be "tantamount to imposing strict liability . . . for all work place conversations that are inappropriate, regardless of the employer's knowledge of them or response."). Because El-Deyasstty fails to establish the Commission's negligence, she fails to impute the conduct to the employer and thus does not plead a prima facie case of sexual harassment.

El-Deyasstty's second claim of sexual harassment accuses a female coworker of threatening to kill El-Deyasstty with a firearm. This claim fails for three reasons. Most importantly, El-Deyasstty again fails to offer any evidence that the Commission acted negligently in responding to her report. The Commission investigated this allegation and again found no corroboration, thus it did not have a legal duty to reprimand the accused employee. In addition, in the face of substantial evidence to the contrary, El-Deyasstty fails to establish that the event actually occurred. Finally, El-Deyasstty neither alleges nor attempts to show that the threat was made based on her sex. For these reasons, she fails to establish a prima facie case, which compels summary judgment for the Commission.

## B. Sex Discrimination

El-Deyasstty claims that the Commission engaged in sex-based discrimination by terminating her employment.[4] She again fails to establish a prima facie case since, in this context, she was not meeting the Commission's legitimate expectations at the time of her termination. There are furthermore no facts or circumstances supporting an inference that the adverse action was based on an unlawful sex-based consideration. Finally, even if El-Deyasstty could establish a prima facie case, the Commission has a legitimate, non-discriminatory reason for her termination, which El-Deyasstty fails to rebut. As such, the Court must grant summary judgment to the defendant.

Individual claims of intentional sex-based discrimination are analyzed under the *McDonnell Douglas* burden-shifting framework. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). In cases of discriminatory discharge, a plaintiff pleads a prima facie case by showing (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) at the time of the action, she performed at a level that met her employer's legitimate expectations, and (4) the position either remained open or was filled by a similarly qualified applicant outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2005). Once the plaintiff satisfies her prima facie showing, the employer must dispute this

---

[4] She also alleges that the Commission passed her over for a promotion in 2009, in favor of a less-experienced coworker. (Pl.'s Mot. 4; Pl.'s Answer Exs. 4-A, 4-B.) This claim is not considered as she neither pled this allegation in her timely EEOC complaint nor filed suit within the appropriate statutory period. *See Smith v. First Union Nat'l. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."); *see also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. . . . it is merely an unfortunate event in history which has no present legal consequences.").

inference with evidence of a legitimate, non-discriminatory reason for engaging in the adverse employment action. *Id.* Upon this showing, the burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual and that its act was discriminatory. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12 (1993).

Even though El-Deyasstty's sex and termination are undisputed, she fails entirely to produce any evidence that she met the Commission's legitimate business expectations at the time of her termination. Critically, she admits to having violated an explicit condition of employment, namely, the prohibition on calling coworkers at their homes.[5] Additionally, El-Deyasstty does not provide any evidence that her position remained open or that she was replaced by a male. Since she fails to provide any evidence of these two elements, the Court is again required to grant summary judgment to the defendant.

Moreover, even if the plaintiff could establish a prima facie case, her phone calls to coworkers' homes provide the Commission with a legitimate, non-discriminatory reason for terminating her employment. El-Deyasstty not only concedes that she made the calls but also does nothing to refute the Commission's assertion that this violated its directive. The Commission's reason for her termination is thus not pretext. The Court must consequently grant summary judgment to the defendant.

## C. Retaliation

The plaintiff's final claim is that she was terminated in retaliation for filing a complaint with the EEOC in 2010. Her claim is unsuccessful as there is no causal connection between her

---

[5] El-Deyasstty attempts to justify her misconduct by asserting that she was not in her right state of mind and is therefore not responsible for her actions. This does not save her claim. First of all, she cites no authority in support of this defense. Moreover, as the instant action does not allege discrimination on the basis of a disability, her justification has no bearing on the merits of her claim.

2010 EEOC filing and her termination. Additionally, as previously stated, the defendant has a legitimate, non-discriminatory reason for terminating the plaintiff, which she has failed to rebut.

A plaintiff states a prima facie claim of retaliation by showing (1) she participated in a protected activity, (2) she suffered an adverse employment action, and (3) the protected participation and the adverse employment action are causally related. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). The plaintiff need not establish that she was a victim of discrimination in order to maintain a successful retaliation claim. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-67 (2006). Retaliation claims also follow the *McDonnell Douglas* burden-shifting framework. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998).

El-Deyasstty asserts but does not offer evidence of a causal connection between her initial EEOC claim in January 2010 and her termination in March 2011. Over thirteen months passed between when the Commission was notified of the first EEOC claim and El-Deyasstty's termination. This large lapse in time and the complete absence of other evidence supporting retaliation preclude an inference of causation and compel summary judgment for the Commission. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."); *see also Dowe*, 145 F.3d at 657 ("A lengthy time lapse between . . . the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").

Even if El-Deyasstty could establish this connection, the Commission once again has a legitimate, non-discriminatory reason for the adverse employment action, which El-Deyasstty

does not successfully rebut.[6] The Court may not impose liability on an employer for terminating employees due to clear acts of insubordination. Because the plaintiff's retaliation claim raises no genuine issue of material fact, summary judgment is again appropriate.

### IV. CONCLUSION

For the reasons set forth above, the Court shall grant the defendant's motion for summary judgment with respect to all claims. The plaintiff's motion shall be denied.

The Court shall enter an appropriate order.

/s/
John A. Gibney, Jr.
United States District Judge

Date: June 29, 2012
Richmond, VA

---

[6] El-Deyasstty's empty assertion that her conduct was protected under the Family Medical Leave Act (FMLA), which creates a cause of action for interfering, restricting, or denying the exercise of an FMLA activity, 29 U.S.C. § 2615, is to no avail. She does not show individual or employer FMLA coverage, a violation of any FMLA rights, retaliation for exercising FMLA rights, or a causal connection between her participation in an FMLA activity and her firing. *See generally Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748 (E.D. Va. 2011). In short, the FMLA does not help her case in any way.

11